**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 (Subchapter V) |
| | ) |
| PHYSIQ, INC.[1] | ) Case No. 23-10102 (BLS) |
| | ) |
| Debtor. | ) |
| | ) |

**DEBTOR'S MOTION FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING
DEBTOR TO OBTAIN POSTPETITION FINANCING (II) GRANTING LIENS,
SECURITY INTERESTS AND SUPERPRIORITY CLAIMS, (III) SCHEDULING FINAL
HEARING, AND (IV) GRANTING RELATED RELIEF**

physIQ, Inc. (the "Debtor") hereby requests the entry of interim and final orders

authorizing it to obtain postpetition financing.  In support of this Motion, the Debtor submits the

*Declaration of Gary Conkright in Support of the Debtor's Chapter 11 Petition and First Day Relief*

(the "First Day Declaration"), filed concurrently herewith and incorporated herein by reference.[2]

In further support of this Motion, the Debtor respectfully represents as follows:

**RELIEF REQUESTED**

1.    Through this Motion, the Debtor seeks the entry of interim and final orders,

substantially in the form of the interim order attached hereto as **Exhibit 1** and a final order to be

submitted at a later date (respectively, the "Interim Order" and "Final Order"):

> a.    authorizing the Debtor to obtain secured postpetition financing on a
> superpriority basis (the "DIP Financing", and the loans provided to the
> Debtor thereunder, the "DIP Loans") pursuant to the terms and conditions
> of that certain Debtor-In-Possession Loan and Security Agreement attached
> hereto as **Exhibit 2** (as the same may be amended, supplemented, restated
> or otherwise modified from time to time, the "Loan Agreement"), by and
> among (i) the Borrower, and (ii) PhysIQ Lending Group, LLC (the
> "Lender");[3]

---

[1] The last four digits of the Debtor's federal tax identification number is 6980. The Debtor's address is 200 W. Jackson Blvd., Suite 550, Chicago, IL 60606.

[2] Capitalized terms not otherwise defined carry the meaning ascribed to them in the First Day Declaration.

[3] One of the Lender's principals indirectly holds a small shareholder interest (less than 1%) in the Debtor.

b.      authorizing the Debtor to execute the Loan Agreement and the other documents, agreements and instruments delivered pursuant thereto or executed or filed in connection therewith, all as may be reasonably requested by the Lender (as the same may be amended, restated, supplemented or otherwise modified from time to time, and collectively with the Loan Agreement, the "DIP Loan Documents");

c.      authorizing the Debtor to consummate the transactions contemplated by the DIP Loan Documents;

d.      granting to the Lender the DIP Liens (as defined below) on all of the Collateral (as defined below) to secure the DIP Financing and all obligations owing and outstanding thereunder and under the DIP Loan Documents, as applicable, and the Interim Order and any Final Order, as applicable (collectively, and including all "Obligations" as defined in the Loan Agreement, the "DIP Indebtedness"), subject only to prior payment of the Carve-Out (as defined below);

e.      granting allowed superpriority administrative expense claims to the Lender in connection with the DIP Financing;

f.      scheduling a hearing (the "Final Hearing"), pursuant to Rule 4001(c)(2) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to consider entry of the Final Order; and

g.      granting such other and further relief as this Court deems necessary and just.

## JURISDICTION AND VENUE

2.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Pursuant to Rule 9013–1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtor consents to the entry of a final order by the Court in connection with this matter to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

3.      Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory basis for the relief requested herein are sections 105 and 364(c) of Title 11 of the United States Code (the "Bankruptcy Code"), Rules 4001, 6003 and 9013 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"), and Local Rule 4001-2.

## BACKGROUND

5.      On the date hereof (the "Petition Date"), the Debtor filed a voluntary petition for relief under subchapter V of chapter 11 of the Bankruptcy Code. The Debtor is managing its property and conducting its business as a debtor-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

6.      The Debtor is a startup company that provides analytics through a software platform to health care and life science providers.  Specifically, the Debtor provides an FDA cleared data analytic platform that allows for its health care and life science customers to accurately detect, assess and analyze the physiologic changes to an individual based upon various internal and external stimuli.  Stimuli include pharmaceuticals, exercise, vaccines, sleep, stress, and other internal and external factors that impact an individual and the physiologic response from the individual in terms of objectively measured data, such as heart rate, temperature, respiration, blood pressure, etc.

7.      The factual background regarding the Debtor, including its historical business operations and the events precipitating the chapter 11 filing, is set forth in the First Day Declaration.

## A.      Background to Proposed DIP Financing

8.      As discussed in the First Day Declaration, prior to the Petition Date, the Debtor faced severe liquidity challenges.  Though the Debtor and its assets were unencumbered by any liens or security interests, the Debtor was unable to find a source of financing for its operations other than the Lender.  And the Lender was unwilling to go forward with the financing

3

unless (i) the Debtor (A) filed a chapter 11 bankruptcy case, and (B) obtained bankruptcy court approval of the financing, and (ii) the Lender received the protections contemplated by section 364(c) of the Bankruptcy Code.

9.     The Lender has agreed to provide the DIP Financing to the Debtor on the terms set forth in the Loan Agreement.  The terms of the DIP Financing and the Loan Agreement were the subject of extensive and lengthy arms' length and good faith negotiations.  The Debtor, in an exercise of its sound business judgment, determined that the terms of the proposed DIP Financing represent a fair and reasonable outcome for its estate and should be approved by this Court.

10.     Following careful review, the Debtor concluded that the Lender's proposed terms would allow the Debtor to meet its goals in this bankruptcy case (the "Chapter 11 Case") and provide the Debtor with sufficient liquidity on the best available economic terms. Through the DIP Financing and the budget attached as Exhibit A to the Loan Agreement (as amended or supplemented in accordance with the Loan Agreement, the "Approved Budget"), the Debtors will have access to liquidity which the Debtor believes will be sufficient to fund its ordinary course operations and accruing administrative expenses pending the confirmation of a plan of reorganization.  Perhaps most importantly, the DIP Financing and the Approved Budget will provide the Debtor with the working capital that the Debtor believes is sufficient to maintain going concern value, satisfy its ongoing payroll obligations to its dedicated employees, and otherwise meet its administrative obligations in the Chapter 11 Case.

11.     The Debtor seeks to move forward with the proposed DIP Financing on the terms set forth in the Loan Agreement and the other DIP Loan Documents. Subject to this Court's approval, the Debtor intends to draw on the DIP Financing in order to satisfy its ongoing working

4

capital needs during this Chapter 11 Case, all in accordance with the Approved Budget, which is intended to cover projected cash receipts and disbursements on a weekly basis for the postpetition period through the confirmation of a plan.

**B.    Summary of Essential Terms of DIP Financing**

12.    In accordance with Bankruptcy Rule 4001(b) and Local Rule 4001-2(a)(i)(A), below is a summary[4] of the essential terms of the proposed DIP Financing and the location of the same in the proposed Interim Order and/or the Loan Agreement:

| | |
|---|---|
| Borrower: | PhysIQ, Inc. |
| Lender: | PhysIQ Lending Group, LLC |
| Type: | Multi-draw term loan |
| Maturity Date: | January 26, 2024 [Interim Order ¶ 13; Loan Agr. pp. 6, 8; § 2(e)] |
| Interim Loan Amount: | $1,700,000 [Interim Order ¶ 2; Loan Agr. p. 5; § 2(a)] |
| Final Loan Amount: | $8,000,000 [Loan Agr. p. 6; § 2(a)] |
| Use of DIP Financing: | The DIP Financing proceeds shall be used for the purpose of funding the Debtor's postpetition operations in accordance with the Budget.  Except as provided in the Financing Orders, no proceeds of the DIP Financing may be utilized by Debtor to finance in any way any professional fees, disbursements, costs or expenses incurred in connection with asserting, investigating, or preparing for any claims or causes of action against Lender or Lender's counsel or advisors (including advisors to their counsel) and/or investigating, challenging or raising any defenses to the DIP Obligations or any Liens under or in connection with the Loan Agreement.  [Interim Order ¶ 22; Loan Agr. § 6(c)] |
| Interest Rate: | Adjusted SOFR, plus 10.00% per annum.  [Interim Order ¶ 5; Loan Agr. § 3(a)] |

---

[4] The summaries and descriptions of the terms and conditions for the proposed DIP Financing and the provisions of the proposed Interim Order and the Final Order set forth in this Motion are intended solely for informational purposes to provide the Court and parties in interest with an overview of the significant terms thereof. The summaries and descriptions are qualified in their entirety by the proposed Interim Order, the Final Order, and the Loan Agreement. In the event there is any conflict between this Motion and the Interim Order, the Final Order, and the Loan Agreement, then the Interim Order, the Final Order, and the Loan Agreement will control in all respects.

| | |
|---|---|
| Default Rate: | 2% per annum above the Interest Rate set forth above [Loan Agr. § 3(b)] |
| Loan Fees and Issuance of Warrant: | Closing fee in the amount of $160,000 and an initial reimbursement of $40,000 for attorneys' fees and expenses, which closing fee and expense reimbursement will be added to and paid from the proceeds of the DIP Indebtedness. [Interim Order ¶ 5; Loan Agr. § 3(e)]. Exit fee equal to 5% of the aggregate Credit Facility Advances (as defined in the Loan Agreement) upon the earliest to occur of (a) the Loan Maturity Date (as defined in the Loan Agreement), (b) the consummation of a Change of Control (as defined in the Loan Agreement) and (c) the prepayment of all obligations under the DIP Loan Documents. [Interim Order ¶ 5; Loan Agr. § 3(f)]. Issuance of Warrant (as defined in the Loan Agreement) to purchase shares of preferred stock of Debtor upon entry of Interim Order and as condition precedent to funding. [Interim Order ¶ 3; Loan Agr. § 4(b)(vi)]. |
| Collateral: | Any and all assets and rights of the Debtor, wherever located, whether now owned or hereafter acquired or arising, including, without limitation and subject to the terms of the Loan Agreement, all personal, fixture and real property, all goods (including inventory, equipment and any accessions thereto), instruments (including promissory notes), documents, accounts, chattel paper (whether tangible or electronic), deposit accounts, letter-of-credit rights (whether or not the letter of credit is evidenced by a writing), securities and all other investment property, supporting obligations, other contract rights or rights to the payment of money, insurance claims and proceeds, all general intangibles, any and all causes of action (including, subject to entry of the Final Order, any causes of action of the Debtor pursuant to Chapter 5 of the Bankruptcy Code ("Avoidance Actions"), and the proceeds, products, rents and profits of all the foregoing. [Interim Order ¶ 9; Loan Agr. § 5(a)] |
| Lien Priority: | The DIP Liens shall constitute a first-priority perfected security interest in and lien upon the Collateral, which is currently unencumbered  Specifically, pursuant to section 364(c) of the Bankruptcy Code, the DIP Liens shall be secured by (A) a perfected Lien on the Collateral which came into existence or was acquired by the Debtor on or after the Petition Date, subject to no other lien other than liens consisting of (1) valid, perfected, non-avoidable and enforceable liens in existence as of the Petition Date, and (2) valid liens in existence at the time of the Petition Date that are perfected subsequent to the Petition Date as |

6

permitted by Section 546(b) or 362(b) of the Bankruptcy Code, and (B) a perfected lien on the Collateral which came into existence or was acquired by the Debtor prior to the Petition Date, subject to no other lien other than liens consisting of (1) valid, perfected, non-avoidable and enforceable liens in existence as of the Petition Date, and (2) valid liens in existence at the time of the Petition Date that are perfected subsequent to the Petition Date as permitted by Section 546(b) or 362(b) of the Bankruptcy Code. [Interim Order, ¶ 11; Loan Agr. § 8(f).]

Superpriority Claim:   The Lender shall also have an allowed superpriority administrative expense claim (the "Superpriority Claim") in this Chapter 11 Case or in any Successor Case for all DIP Indebtedness, having priority over any and all other administrative expenses of and unsecured claims against the Debtor, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kinds specified in or arising or ordered under sections 105(a), 326, 328, 330, 331, 503(a), 503(b), 506(c) (subject to the entry of the Final Order), 507(a), 507(b), 546(c), 546(d), 726, 1113, and 1114 and any other provision of the Bankruptcy Code or otherwise, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed Superpriority Claim shall be payable from and have recourse to all pre- and postpetition property of the Debtor, including all cash and cash equivalents, and all proceeds thereof including, without limitation, any proceeds of Avoidance Actions. The Superpriority Claim shall be subject and subordinate in priority of payment only to prior payment of the Carve-Out (as described below).  [Interim Order ¶ 12; Loan Agr. § 5(d)]

Carve-Out:   The DIP Liens and the Superpriority Claim shall be subject only to (a) the payment of any unpaid fees payable pursuant to 28 U.S.C. § 1930(a)(6), (b) the aggregate allowed unpaid fees and expenses payable under sections 330 and 331 of the Bankruptcy Code to professional persons retained by the Debtor pursuant to Court order in an amount not to exceed the sum of (i) the aggregate amounts set forth in the Budget for fees and expenses actually incurred prior to the occurrence of an Event of Default (as defined in the Loan Agreement) and (ii) $50,000 for fees and expenses incurred subsequent to an Event of Default, and (c) all reasonable fees and expenses, up to the amount of $20,000, incurred by a trustee appointed under section 1183 of the Bankruptcy Code (the amounts specified in clauses (a), (b), and (c) of this paragraph, including the limitations therein, collectively are defined in the Interim Order and the Loan

Agreement as the "<u>Carve-Out</u>").  [Interim Order ¶17; Loan Agr. at p. 3]

| | |
|---|---|
| Case Milestones: | Case milestones that trigger an event of default (unless extended in writing by the Lender): |

(i)     the Final Order, in form and substance acceptable to the Lender, in its sole discretion, has not been entered by the Court on or before the date that is thirty (30) days after the Petition Date;

(ii)    if, on before forty-six (46) days after the Petition Date, the Debtor has failed to file a report pursuant to section 1188(c) of the Bankruptcy Code;

(iii)   if, on before ninety (90) days after the Petition Date, or such later date as the Court may approve after notice and a hearing, but in no event later than 150 days after the Petition Date without prior written consent of the Lender (the "<u>Plan Deadline</u>"), the Debtor has failed to file a plan of reorganization in form and substance acceptable to the Lender, in its sole discretion (an "<u>Acceptable Plan</u>");

(iv)   if an order, in form and substance acceptable to the Lender in its sole discretion, confirming the Acceptable Plan, has not been entered on or before forty-five (45) days after the applicable Plan Deadline; or

(v)    if the effective date of the Acceptable Plan has not occurred on or before sixty (60) days after the applicable Plan Deadline.

[Interim Order ¶ 17(c)]

| | |
|---|---|
| Events of Default: | The occurrence of any of the following events, unless waived in writing by the Lender, shall constitute an event of default (an "<u>Event of Default</u>," and collectively, the "<u>Event of Defaults</u>"): |

(i)     an "Event of Default" as defined under the DIP Loan Documents (including § 10(a) of the Loan Agreement) shall have occurred and is continuing, unless waived pursuant to the DIP Loan Documents;

(ii)    the failure by the Debtor to perform, in any respect, any of the material terms, provisions, conditions, covenants, or obligations under the Interim Order;

(iii)   if the Debtor hits any of the case milestones described immediately above;

(iv)   the failure of the Debtor to be in Substantial Compliance (as defined in the Loan Agreement) the Budget for any

weekly reporting period after the Second Credit Facility Advance (as defined in the Loan Agreement);

(v)     the filing by the Debtor of any motion seeking, or the granting of any motion providing for, reversal or modification of the Interim Order;

(vi)    the filing by the Debtor of any motion seeking, or the granting of any motion providing for, allowance of any superpriority claim that is equal or senior to the Superpriority Claim in this Chapter 11 Case or in any Successor Case;

(vii)   the Debtor shall have entered into any commitment or agreement with respect to any financing (i) that is secured by a security interest or other lien on all or any portion of the Collateral that is equal or senior to the DIP Liens, or (ii) any portion of which purports to be, or would be, payable prior to payment in full of all DIP Indebtedness; or

(viii)  the consent of the Debtor to (i) the standing of any party to pursue any claim or cause of action against the Lender, or (ii) the commencement by any party of any such claim or cause of action.

[Interim Order ¶ 17; Loan Agr. § 10(a)]

| | |
|---|---|
| Credit Bidding: | Subject to section 363(k) of the Bankruptcy Code and entry of a Final Order, the Lender shall be entitled to credit bid up to the full amount of the outstanding DIP Indebtedness, including, without limitation, any accrued interest and expenses, in any sale of any Collateral, whether such sale is effectuated through section 363 of the Bankruptcy Code in a chapter 11 or chapter 7 proceeding, under section 1129 of the Bankruptcy Code in a chapter 11 proceeding, by a chapter 7 trustee in a chapter 7 proceeding, or otherwise. [Interim Order ¶ 32; Loan Agr. § 12(j)] |
| 506(c) Waiver: | Subject to entry of the Final Order, no costs or expenses of administration which have been or may be incurred in the chapter 11 case at any time shall be charged against the Lender, any of its claims, or the Collateral pursuant to section 506(c) of the Bankruptcy Code, or otherwise. [Interim Order ¶ 26; Loan Agr. § 2(j)] |

## C.    **Additional Required Disclosures**

13.    Pursuant to Bankruptcy Rule 4001 and Local Rule 4001-2(a)(i)(B) and (C), a debtor-in-possession seeking authority to obtain financing must disclose the presence and

location of certain provisions contained in the documentation evidencing the financing. The debtor-in-possession must also justify the inclusion of certain such provisions. Set forth below are the disclosures required in accordance with such rules:

    a.    **Amount of Proposed Loan/Committed Amount/New Funding:**

$8,000,000, of which $1,700,000 would be available upon entry of the Interim Order. [Interim Order ¶ 2; Loan Agr. p. 5; § 2(a)]

    b.    **Pricing and Economic Terms:**

Interest rate equal to Adjusted SOFR, plus 10.00% per annum. [Interim Order ¶ 5; Loan Agr. § 3(a)]  Closing fee in the amount of $160,000 and an initial reimbursement of $40,000 for attorneys' fees and expenses, which closing fee and expense reimbursement will be added to and paid from the proceeds of the DIP Indebtedness. [Interim Order ¶ 5; Loan Agr. § 3(e)).  Exit fee equal to 5% of the aggregate Credit Facility Advances (as defined on p. 4 of the Loan Agreement) [Interim Order ¶ 5; Loan Agr. § 3(f)].  Issuance of Warrant (as defined on p. 9 of the Loan Agreement) to purchase shares of preferred stock of Debtor upon entry of Interim Order and as condition precedent to funding.  [Interim Order ¶ 3; Loan Agr. § 4(b)(vi)]

    c.    **Provisions Limiting Court's Ability to Enter Future Orders:**

No obligation, payment, transfer, or grant of a lien or security interest under the DIP Loan Documents or the Interim Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under section 502(d) of the Bankruptcy Code) or subject to any avoidance, reduction, set off, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaims, cross-claims, defenses, or any other challenges under the Bankruptcy Code or any applicable law or regulation by any person or entity.  [Interim Order ¶ 8]

Neither section 105 of the Bankruptcy Code nor any other provision of the Bankruptcy Code or applicable law shall be utilized to prohibit the Lender's exercise, enjoyment and enforcement of any of its rights, benefits, privileges and remedies pursuant to the Interim Order and any DIP Loan Documents.  [Interim Order ¶ 19]

The provisions of the Interim Order are binding upon all parties in interest and their successors and assigns.  [Interim Order ¶ 33]

Subject to section 363(k) of the Bankruptcy Code and entry of a Final Order, the credit bid provisions in ¶ 32 of the Interim Order would restrict the Court's ability to modify the Lender's right to credit bid.  [Interim Order ¶ 32]

**d.** **Provisions Providing for Funding of Non-Debtor Affiliates from Loan Proceeds:**

N/A

**e.** **Material Conditions to Closing and Borrowing:**

Customary conditions to closing, including entry of the Interim Order and Final Order, satisfaction or waiver of conditions in the DIP Loan Documents by the Lender, compliance with the Approved Budget, and issuance of the Warrant.  [Loan Agr. § 4]

**f.** **Carve-Out:**

The DIP Financing provides for a Carve-Out, as described above. [Interim Order ¶17; Loan Agr. at p. 3]

**g.** **Postpetition Liens on Unencumbered Assets:**

The DIP Liens attach to all of the Debtor's unencumbered assets, and upon entry of the Final Order, the Avoidance Actions. [Interim Order ¶¶ 9, 11; Loan Agr. §§ 5(a), 8(f)]

**h.** **Plan or Sale Milestones:**

The Interim Order sets forth certain milestones relating to approval of the DIP Financing and the plan process. [Interim Order ¶ 17(c)]

**i.** **Prepayment Penalty:**

None.

**j.** **Provision Causing One Jointly Administered Debtor to Become Liable for Prepetition Debt of Other Jointly Administered Debtor:**

N/A

**k.** **Provision Requiring Payment of Lender's Expenses and Attorney's Fees Without Notice or Review or Approval:**

The Interim Order provides for the payment of the Lender's expenses and fees without notice or review by the U.S. Trustee or

LEGAL\61143075\6

prior approval of the Court, including an initial reimbursement of $40,000. [Interim Order ¶¶ 5, 6]

**l.**  **<u>Provision Prohibiting Use of Estate Funds to Investigate Liens and Claims of Prepetition Lender:</u>**

N/A

**m.**  **<u>Termination or Default Provisions Concerning Use of Cash Collateral or Availability of Credit:</u>**

The DIP Financing terminates upon the occurrence of the Loan Maturity Date or the Termination Date, as applicable and as both terms are defined in Section 1 of the Loan Agreement. [Interim Order ¶ 13; Loan Agr. § 2(a)-(b)] The Events of Default described above can serve as a basis for the Lender to terminate the DIP Financing. [Loan Agr. § 10(b)]

**n.**  **<u>Cross Collateralization / Elevation of Prepetition Debt Provisions:</u>**

N/A

**o.**  **<u>Roll-Up:</u>**

N/A

**p.**  **<u>Priming Liens:</u>**

None

**q.**  **<u>Provisions Binding the Estate or Other Parties with Respect to Validity, Priority or Perfection of Prepetition Liens Without Giving at Least 75 Days' Notice or Limit Court's Ability to Grant Relief in Event of Successful Challenge:</u>**

N/A

**r.**  **<u>Provisions Immediately Approving All Terms and Conditions of Loan Agreement:</u>**

Subject to the terms of the Interim Order, the Debtor is authorized to execute the Loan Agreement and take such further actions and enter into such agreements, instruments and documents, including, without limitation, the Warrant (as defined in Section 1 of the Loan Agreement) as may reasonably be necessary or required to evidence the DIP Financing and its corresponding obligations to the Lender, and to consummate the terms and provisions of the Interim Order.

12

[Interim Order ¶ 3]  The Lender's willingness to provide the DIP Financing is conditioned on the inclusion of this provision.

**s.**  **Provisions That Modify or Terminate the Automatic Stay to Allow Lender to Exercise Remedies Without Five (5) Days' Notice ("Remedies Period Notice"):**

The automatic stay pursuant to section 362 of the Bankruptcy Code is vacated as to the Lender to permit it to perform in accordance with, and exercise, enjoy and enforce its rights, benefits, privileges and remedies pursuant to the Interim Order and any other DIP Loan Documents without further application or motion to, or order from, the Court.  [Interim Order ¶ 19].  The Lender's willingness to provide the DIP Financing is conditioned on the inclusion of this provision.

**t.**  **Provisions Limiting What Parties May Raise at Emergency Hearing During Remedies Period Notice:**

None.

**u.**  **Provisions Granting Immediate Liens on Avoidance Actions:**

Lien on Avoidance Actions only after entry of Final Order. [Interim Order ¶ 9)].  The Lender's willingness to provide the DIP Financing is conditioned on the inclusion of this provision.

**v.**  **Provisions Immediately Waiving Debtor's Rights under Section 506(c):**

Waiver effective upon entry of Final Order. [Interim Order ¶¶ 12, 26; Loan Agr. §2(j)].  The Lender's willingness to provide the DIP Financing is conditioned on the inclusion of this provision.

**w.**  **Equities of the Case Provisions:**

N/A

**x.**  **Marshalling Provisions:**

Subject to entry of the Final Order, the Lender shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Collateral.  [Interim Order ¶ 27; Loan Agr. § 10(c)].  The Lender's willingness to provide the DIP Financing is conditioned on the inclusion of this provision.

**D.**     <u>**Need for Financing**</u>

14.     The Debtor has an urgent and immediate need for access to funds available under the DIP Financing. Such funding is necessary in order for the Debtor to fund its payroll and to have sufficient liquidity to operate its business and satisfy accruing administrative obligations pending the chapter 11 plan process and ultimate outcome of the Chapter 11 Case. Without immediate access to the DIP Financing, the Debtor would not be able to continue its business operations. Accordingly, the Debtor requests that the Court authorize the DIP Financing on the terms contemplated herein, initially on an interim basis and, following the Final Hearing, on a final basis.

<u>**BASIS FOR RELIEF**</u>

**A.**     <u>**The Debtor Should Be Permitted to Obtain Postpetition Financing Pursuant to Section 364(c) of the Bankruptcy Code**</u>

15.     Section 364(c) of the Bankruptcy Code requires a finding, made after notice and a hearing, that the debtor seeking postpetition financing on a secured basis cannot "obtain unsecured credit allowable under section 503(b)(l) of [the Bankruptcy Code] as an administrative expense." 11 U.S.C. § 364(c).

16.     In evaluating proposed postpetition financing under section 364(c) of the Bankruptcy Code, courts perform a qualitative analysis and generally consider similar factors, including whether:

   a.     unencumbered credit or alternative financing without superpriority status is available to the debtor;

   b.     the credit transactions are necessary to preserve assets of the estate;

   c.     the terms of the credit agreement are fair, reasonable, and adequate;

   d.     the proposed financing agreement was negotiated in good faith and at arm's-length and entry thereto is an exercise of sound and reasonable business judgment and in the best interest of the debtors' estate and its creditors; and

     e.    the proposed financing agreement adequately protects the prepetition secured parties.

*See, e.g.*, *In re Aqua Assoc.*, 123 B.R. 192 (Bankr. E.D. Pa. 1991) (applying the first three factors in making a determination under section 364(c)).

    17.    For the reasons discussed below, the Debtor satisfies the standards required to obtain postpetition financing in the Chapter 11 Case on a secured and superpriority basis as to the Collateral under sections 364(c)(1), (2) of the Bankruptcy Code.

**B.    The Debtor Is Unable to Obtain Financing on More Favorable Terms**

    18.    As discussed above, the Debtor was unable to obtain alternative financing. Ultimately, the Debtor determined that the DIP Financing provides the Debtor with the best postpetition financing option available and should be approved by this Court. Notably, since the Debtor's assets are unencumbered, the DIP Financing does not depend on the priming of any existing liens.

    19.    The Debtor respectfully submits that its efforts to obtain postpetition financing therefore satisfy the standard required under section 364(c) of the Bankruptcy Code. *See, e.g.*, *In re Sky Valley, Inc.*, 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988) (where few lenders can or will extend the necessary credit to a debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct such an exhaustive search for financing").

**C.    The Proposed Financing is Necessary to Maximize the Value of the Debtor's Estate**

    20.    The Debtor seeks to use the proceeds of the DIP Financing for payroll and general working capital purposes and bankruptcy-related costs and expenses, in accordance with the Approved Budget, to operate its business and maximize value through the process of proposing and confirming a chapter 11 plan. The DIP Financing represents the best economic alternative for a debtor-in-possession lending arrangement.

21.     Simply put, without immediate access to the DIP Financing, the Debtor cannot continue to operate its business. Failure to access the DIP Financing would irreparably damage the Debtor's efforts to effectuate a successful reorganization for the benefit of all its stakeholders. Accordingly, the Debtor urges the Court to authorize the DIP Financing on the terms contemplated herein.

**D.     The Terms of the Proposed Financing are Fair, Reasonable, and Appropriate**

22.     In considering whether the terms of postpetition financing are fair and reasonable, courts consider the terms in light of the relative circumstances of both the debtor and the potential lender. *In re Farmland Indus., Inc.*, 294 B.R. 855, 886 (Bankr. W.D. Mo. 2003); *see also Unsecured Creditors' Comm. Mobil Oil Corp. v. First Nat'l Bank & Trust Co. (In re Ellingsen MacLean Oil Co.)*, 65 B.R. 358, 365 (W.D. Mich. 1986) (a debtor may have to enter into hard bargains to acquire funds).

23.     The terms of the DIP Financing were negotiated in good faith and at arm's-length between the Debtor and the Lender, resulting in an agreement that is designed to permit the Debtor to maximize the value of their assets. Notably, there is no roll-up of prepetition debt contemplated under the DIP Financing – it is all new money. The Debtor submits that the proposed terms of the DIP Financing are fair, reasonable, and appropriate under the circumstances. *See, e.g.*, *Bray v. Shenandoah Fed. Sav. and Loan Ass'n (In re Snowshoe Co.)*, 789 F.2d 1085, 1088 (4th Cir. 1986) (stating that section 364(d) of the Bankruptcy Code imposes no duty to seek credit from every possible lender); *In re Western Pacific Airlines, Inc.*, 223 B.R. 567 (Bankr. D. Colo. 1997) (authorizing postpetition financing that would preserve the value of the debtor's assets).

**E.     Entry Into the Proposed Financing Reflects the Debtor's Sound Business Judgment**

24.     A debtor's decision to enter into a postpetition lending facility under section 364 of the Bankruptcy Code is governed by the business judgment standard. *See, e.g.*, *Trans World*

*Airlines, Inc. v. Travelers Int'l AG (In re Trans World Airlines, Inc.)*, 163 B.R. 964, 974 (Bankr. D. Del. 1994) (approving postpetition credit facility because such facility "reflect[ed] sound and prudent business judgment"); *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990) (financing decisions under section 364 of the Bankruptcy Code must reflect a debtor's business judgment).

25.     Bankruptcy courts routinely accept a debtor's business judgment on many business decisions, including the decision to borrow money. *See, e.g., Group of Inst. Investors v. Chicago, Mil., St. P. & Pac.*, 318 U.S. 523, 550 (1943) (holding that decisions regarding assumption or rejection of leases are left to the business judgment of the debtor); *In re Simasko Prod. Co.,* 47 B.R. 444, 449 (D. Colo. 1985) ("[b]usiness judgments should be left to the board room and not to this Court"). Further, one court has noted that "[m]ore exacting scrutiny [of the debtors' business decisions] would slow the administration of the debtor's estate and increase its cost, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially." *Richmond Leasing Co. v. Capital Bank, N.A.,* 762 F.2d 1303, 1311 (5th Cir. 1985).

26.     Bankruptcy courts generally will defer to a debtor-in-possession's business judgment regarding the need for and the proposed use of funds, unless such decision is arbitrary and capricious, *In re Curlew Valley Assocs.,* 14 B.R. 506, 511-13 (Bankr. D. Utah 1981); *see also Trans World Airlines, Inc.,* 163 B.R. at 974 (approving interim loan, receivables facility and asset-based facility based upon prudent business judgment of the debtor), and generally will not second-guess a debtor in possession's business decisions involving "a business judgment made in good faith, upon a reasonable basis, and within the scope of his authority under the Code." *Curlew Valley,* 14 B.R. at 513-14 (footnotes omitted).

27.     For the reasons set forth above, the Debtor's sound business judgment clearly supports approval of the DIP Financing. Access to the DIP Financing will allow the Debtor to continue to operate, thus maximizing value for all of their constituent stakeholders.

**F.      Interim Order and Final Hearing**

28.     Pursuant to Bankruptcy Rule 4001(c)(2), the Debtor requests that the Court set a date for the Final Hearing that is as soon as practicable, and fix the time and date prior to the final hearing for parties to file objections to the Motion.

29.     The urgent need to avoid immediate and irreparable harm to the Debtor's estate makes it imperative that the Debtor be authorized to access the DIP Financing pending the Final Hearing in order to allow the Debtor to operate and administer this Chapter 11 Case on a postpetition basis. Without the ability to make draws under the DIP Financing, the Debtor would be unable to satisfy accruing postpetition obligations, including payroll, and would not be able to continue its operations as it pursues a plan of reorganization, thus causing irreparable harm to the Debtor and the value of its estate. Accordingly, the Debtor respectfully requests that, pending the Final Hearing, the Interim Order be approved and that the terms and provisions of the Interim Order be implemented and be deemed binding and that, after the Final Hearing, the Final Order be approved in all respects and the terms and provisions of the Final Order be implemented and be deemed binding.

**NOTICE**

30.     The Debtor will provide notice of this motion to: (a) the Office of the U.S. Trustee for the District of Delaware; (b) the holders of the 20 largest unsecured claims against the Debtor; (c) the trustee appointed in this case pursuant to section 1183 of the Bankruptcy Code (the "Trustee"); (d) counsel to the lender under the Debtor's postpetition credit facility (the "DIP Lender"); and (e) any party that requests service pursuant to Bankruptcy Rule 2002. As this motion

18

is seeking "first day" relief, within two business days of the hearing on this motion, the Debtor

will serve copies of this motion and any order entered in respect to this motion as required by

Local Rule 9013-1(m).

## NO PRIOR REQUEST

31.     The Debtor has not made any prior request for the relief sought herein to

this Court or any other court.

WHEREFORE, the Debtor respectfully requests entry of the Interim Order and the

Final Order granting the relief requested herein and such other relief as is just and proper.


Dated: January 26, 2023                    **COZEN O'CONNOR**

*/s/ Thomas J. Francella, Jr.*
Thomas J. Francella, Jr. (DE Bar No. 3835)
Marla S. Benedek (DE Bar No. 6638)
1201 N. Market St., Suite 1001
Wilmington, DE 19801
Telephone: (302) 295-2045
E-mail: tfrancella@cozen.com
E-mail: mbenedek@cozen.com

Robert M. Fishman (pro hac vice pending)
Peter J. Roberts (pro hac vice pending)
123 North Wacker Drive, Suite 1800
Chicago, IL  60606
Telephone: (312) 382-3100
E-mail: rfishman@cozen.com
E-mail: proberts@cozen.com

*Proposed Counsel to the Debtor*