IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>PHYSIQ, INC.,<br><br>                Debtor. | Chapter 11 (Subchapter V)<br><br>Case No. 23-10102 (BLS)<br><br>**Re: D.I. 44**<br><br>Hearing Date: Feb. 23, 2023 at 1:30 p.m.<br>Objections Due: Feb. 20, 2023 at noon |

**UNITED STATES TRUSTEE'S RESPONSE
IN SUPPORT OF MOTION TO DISMISS**

Andrew R. Vara, United States Trustee for Region Three ("U.S. Trustee"), by and through his counsel, files this *Response in Support of Motion to Dismiss* (the "Response") and states as follows:

**JURISDICTION**

1. Pursuant to 28 U.S.C. § 1334; applicable order(s) of the United States District Court for the District of Delaware issued pursuant to 28 U.S.C. § 157(a); and 28 U.S.C. § 157(b)(2)(A), this Court has jurisdiction to hear and resolve this Objection.

2. The U.S. Trustee is charged with overseeing the administration of Chapter 11 cases filed in this judicial district, pursuant to 28 U.S.C. § 586. This duty is part of the U.S. Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts to guard against abuse and over-reaching to assure fairness in the process and adherence to the provisions of the Bankruptcy Code. *See In re United Artists Theatre Co.*, 315 F.3d 217, 225 (3d Cir. 2003) ("U.S. Trustees are officers of the Department of Justice who protect the public interest by aiding bankruptcy judges in monitoring certain aspects of bankruptcy

1

proceedings."); *United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 298 (3d Cir. 1994) ("It is precisely because the statute gives the U.S. Trustee duties to protect the public interest…that the Trustee has standing to attempt to prevent circumvention of that responsibility."); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 499 (6th Cir. 1990) ("As Congress has stated, the U.S. trustees are responsible for 'protecting the public interest and ensuring that the bankruptcy cases are conducted according to [the] law").

3. The U.S. Trustee has standing to be heard on the DIP Motion pursuant to 11 U.S.C. § 307.

## STATEMENT OF FACTS

4. The Debtor filed its voluntary Chapter 11 petition on January 26, 2023 (the "Petition Date"). The Debtor remains in possession of its assets and continues to manage its business as debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

5. Attached to the Petition are the "Resolutions Adopted by Written Consent of Board of Directors of physIQ, Inc." (the "Resolution"). The Resolution describes an emergency telephonic Board Meeting that occurred on January 18, 2023, more than one (1) week before the Petition Date. All Board members participated. The Board was told that the "investor group" had concerns about certain aspects of the term sheet, "including granting of changes to the board of directors, issuance of shares for the warrant and granting the security interest in the loan." Management intended to solicit consent and approval of the investment by preferred shareholders on 24 hours notice.

6. The Resolution noted that without the consent of the preferred shareholders, including the series C shareholder, "the investor group will not fund the investment amount

without authority granted by order of a competent jurisdiction." The investor group would move forward "if an order is provided by a bankruptcy court providing authority to make a portion of such loan immediately on an emergency basis and the remainder on a long-term basis upon further order of court."

7. The Board resolved that if the preferred shareholders did not authorize the investment, the Board "hereby authorizes the filing of a voluntary petition…" The Board further resolved that if the bankruptcy petition was to be filed, the officers were authorized to sign documents and take necessary action to file the petition and obtain funding in accordance with the Board approved term sheet.

8. The Petition also has attached a nine-page listing of Equity Security Holders, one of which is Scrapper Technology Funder LLC ("Scrapper"). While the names and addresses of the Equity Security Holders are provided, the other required information regarding the Security Class, Number of Securities and Kind of Interest was not supplied.

9. The Corporate Ownership Statement required by Fed. Rule of Bankruptcy Procedure 7007.1 (the "Ownership Statement"), signed by Debtor's counsel Thomas Francella, Jr., Esq., also attached to the Petition, certifies that there are no corporations that directly or indirectly own ten percent or more of any class of the Debtor's equity interests. This certification is contradicted in paragraph 18 of the First Day Declaration discussed below wherein the Debtor's CEO avers that Scrapper owns 25% of issued preferred stock.[1]

---

[1] Upon information and belief, the actual percentage owned by Scrapper is over 33%. The Loan and Security Agreement ("Loan Agreement") the Debtor entered into with PhysIQ Lending Group, LLC (the "Lender") was to include a Capitalization Table at Schedule 1. The copy of the Loan Agreement attached to the Debtor's Motion for Approval of Post-Petition Financing (D.I. 3) does not include this Schedule. As of the filing of this Response, the Schedule has not been

10. On the Petition Date Debtor also filed a *Motion for Interim and Final Orders (I) Authorizing Debtor to Obtain Postpetition Financing (II) Granting Liens, Security Interests and Superpriority Claims, (III) Scheduling Final Hearing, and (IV) Granting Related Relief* (the "DIP Motion") (D.I. 3)[2] and the *Declaration of Gary Conkright in Support of the Debtor's Chapter 11 Petition and First Day Relief* (the "First Day Declaration"). (D.I. 8). As stated therein, Mr. Conkright is the Chairman, Chief Executive Officer, and Co-Founder of the Debtor. Mr. Conkright avers the Debtor filed for bankruptcy "in order to move forward with a secured financing facility that would support the Debtor's operations while it pursued a recapitalization under the auspices of a chapter 11 plan." *Id.* at ¶ 7.

11. On January 27, 2023 the U.S. Trustee appointed Natasha Songonuga, Esq. as the Subchapter V Trustee ("Subchapter V Trustee") for this case.

12. On January 30, 2023, Scrapper filed an objection to the DIP Motion (the "Scrapper Initial Objection"). (D.I. 16). As stated therein and as supported by attached corporate documents, in May 2021, Scrapper agreed to purchase 9,676,442 shares of the Debtor's Series C Preferred Stock for $25,000,000 (the "Funder Series C Preferred Stock"). In exchange, Scrapper was given the right to veto certain corporate action by the Debtor that might diminish or extinguish the value of Scrapper's ownership interest, which included the right to veto the Debtor filing bankruptcy and incurring debt. In addition, Scrapper's consent was necessary for the Debtor to issue additional preferred stock.

---

produced in response to requests.

[2] Issues regarding the DIP Motion will be addressed in a separate filing.

4

13.     The first day hearing occurred on January 30, 2023. The Court issued an Interim Order approving the DIP Motion (the "Interim DIP Order") and several order provisions were made subject to entry of a final order. (D.I. 29). The Interim DIP Order allowed the Debtor to obtain up to $1,860,000 in interim post-petition financing from the Lender. The Debtor seeks to borrow up to $8 million under the proposed final DIP order.

14.     On February 9, 2023, Scrapper filed a *Motion to Dismiss the Debtor's Chapter 11 Case* (the "Motion to Dismiss"). (D.I. 44). In response to a motion to shorten, the Court ordered that responses to the Motion to Dismiss are due on February 20, 2023 at noon and the motion will be heard on February 23, 2023. A final hearing on the DIP Motion and other first day motions is also scheduled to occur on February 23, 2023.

15.     As of the filing of this Response, document production and depositions are still occurring with respect to the Motion to Dismiss.

**ARGUMENT**

**A. The Debtor Did Not Have Corporate Authority to File for Bankruptcy**

16.     The law is well-settled. "[A] party cannot subject an entity to bankruptcy without authority." *In re FKF Madison Park Grp. Owner, LLC*, 2011 WL 350306, at *3 (Bankr. D. Del. Jan. 31, 2011). The consequence is that this Court lacks subject matter jurisdiction over a case when a bankruptcy petition is filed without authority. *In re Mid-South Business Associates, LLC*, 555 B.R. 565, 570 (Bankr. N.D. Miss. 2016) (citing *In re Delta Starr Broadcasting, L.L.C.*, 422 F. App'x 362, 368 (5th Cir. 2011)).

17.     The Debtor is a Delaware corporation. *See* Fifth Amended and Restated Certificate of Incorporation of PhysIQ, Inc. (the "COI") attached as Exhibit C to the Motion to

5

Dismiss. The COI requires that certain corporate action must be approved by the "Required Preferred" which is defined as "the holder of at least 66 2/3% of the then-outstanding shares of Preferred Stock (voting together as a single class and not as a separate class and not as separate series, and on an as-converted basis)." (*Id.* at p. 4).

18.     Section 3.4 of the COI mandates that the Required Preferred must give consent in writing or by affirmative vote at a meeting before debt over $100,000 may be incurred or the company may file any voluntary bankruptcy petition or assignment for the benefit of creditors. (*See* COI, §§ 3.4.6 and 3.4.9). The COI is clear that "any such act or transaction entered into without such consent or vote shall be null and void *ab initio*, and of no force or effect." (*Id.* at § 3.4.)

19.     After the January 18, 2023 Board meeting that is described in the Resolution and discussed above, the Debtor sought consent of the preferred shareholders to enter into a bridge financing arrangement that would also require revisions of the COI. (*See* Demand Letter attached as Exhibit G to the Motion to Dismiss.) The Demand Letter also sought consent to file a bankruptcy petition. Responses were due in twenty-four (24) hours. Pursuant to the Debtor's corporate governance documents, both the bridge financing arrangement and the filing of a bankruptcy petition had to be approved by the "Required Preferred", i.e., 66 2/3 % majority of the then outstanding shares of preferred stock.

20.     During the January 30, 2023 first day hearing, Mr. Conkright testified they received consents from only 51% of the preferred shareholders. (*See* First Day Hearing Transcript, Exhibit E to the Motion to Dismiss, pp. 62 – 63). At the same hearing Debtor's counsel admitted that in addition to Scrapper not consenting, there was another 11% of preferred shareholders for which

they did not receive a consent "one way or the other."   (*Id.* at p. 49).

21.     The record developed to date does not reflect when the consents were received. As of the filing of this Response, there has been inconsistent testimony as to whether there were any Board meetings after January 18, 2023.  Dr. Anvur testified on February 16, 2023 there were none after that date while Mr. Jacobs testified on February 20, 2023 there was a Board meeting on January 26, 2023 that all members attended.

22.     Of note, none of the details outlined above are set forth in Mr. Conkright's First Day Declaration.

23.     Pursuant to DGCL § 141 (a), a board's authority may be restricted in the company's certificate of incorporation.  The Debtor's COI clearly and unequivocally did just that.  In order for the Debtor to file for bankruptcy, 66 2/3% of the preferred shareholders had to vote in favor of the filing.  The Board's knowledge of this requirement led to the contingent resolutions approved during the January 18, 2023 meeting and the Demand Letter sent to preferred shareholders asking for consent to borrow money, change the certificate of incorporation and/or file for bankruptcy.

24.     The Board's attempt to obtain consent from the Required Preferred came up short. As the COI provides, the bankruptcy filing, an act taken without consent of the Required Preferred, "shall be null and void *ab initio,* and of no force or effect."

### B.     Due to the Board's Lack of Authority this Case Should be Dismissed

25.     The Supreme Court held, almost 80 years ago, that state law governs corporate authority to file petitions for relief under the Bankruptcy Code. *Price v. Gurney,* 324 U.S. 100, 106 (1945).  "If the [court] finds that those who purport to act on behalf of the corporation have not been granted authority by local law to institute the proceedings, it has no alternative but to

dismiss the petition." *Id. See also In re Franchise Servs. of N. Am., Inc.,* 891 F.3d 198, 206-8 (5th Cir. 2018), as revised (June 14, 2018).

26. During the First Day hearing, reference was made to Judge Walrath's oral ruling in *In re Pace Industries, LLC,* Case No. 20-10927 (Bankr. D. Del. May 5, 2020).[3] As the Court there acknowledged, "there is no case directly on point, holding that a blocking right by a shareholder who is not a creditor is void as contrary to federal public policy that favors the constitutional right to file bankruptcy." (*See Pace* Transcript, attached as Exhibit A to the Motion to Dismiss, p. 38).

27. Judge Walrath went on to deny the motion to dismiss based on the facts of the *Pace* case. It was filed after the COVID-19 shut down, the Debtors' plant was closed and the employees were furloughed. It was a prepack case and the lender agreed to the payment of all creditors in full if the plan was confirmed. Judge Walrath considered what was in the best interest of all and denied the motion to dismiss.

28. Here, the Debtor entered bankruptcy to obtain a court order so that the "investment group" with which it had been negotiating for at least two months would agree to loan up to $8 million in large part to cover salaries, many of which exceed $200,000 per year.[4] No mention has been made of payment of Debtor's purported $6.8 million in prepetition unsecured debt. No critical vendor motion has been filed. Debtor has no secured debt so there is no threat of foreclosure. There is no prepack plan. And, as has been learned through the depositions

---

[3] The Court is not bound to follow rulings of other members of this Court, and in particular is not bound by oral rulings.

[4] The onerous loan terms are the subject of an objection to be filed by the U. S. Trustee on or before February 21, 2023 at 10:00 a.m.

conducted to date, prepetition efforts to raise capital or obtain a loan or purchaser were unsuccessful.

29. Therefore, even if this Court is inclined to apply the *Pace* Court's analysis, the circumstances relied upon by Judge Walrath in making her ruling are not present here.

## RESERVATION OF RIGHTS

30. At this time discovery is ongoing. The U.S. Trustee leaves the parties to their burden of proof and reserves any and all rights, remedies and obligations to, among other things, complement, supplement, augment, alter or modify this Response, assert any objection, file an appropriate motion, or conduct any and all discovery as may be deemed necessary or as may be required and to assert such other grounds as may become apparent upon further factual discovery.

WHEREFORE the U.S. Trustee requests that this Court issue an order dismissing this case and/or granting such other relief that this Court deems fair and just.

Dated: February 20, 2023　　　　　　　　Respectfully submitted,
　　　　Wilmington, Delaware

　　　　　　　　　　　　　　　　　　　　**ANDREW R. VARA**
　　　　　　　　　　　　　　　　　　　　**UNITED STATES TRUSTEE**
　　　　　　　　　　　　　　　　　　　　**REGIONS 3 AND 9**
　　　　　　　　　　　　　　　　　　　　By: */s/Linda Richenderfer*
　　　　　　　　　　　　　　　　　　　　Linda Richenderfer (DE #4138)
　　　　　　　　　　　　　　　　　　　　Trial Attorney
　　　　　　　　　　　　　　　　　　　　Office of the United States Trustee
　　　　　　　　　　　　　　　　　　　　844 King Street, Suite 2207
　　　　　　　　　　　　　　　　　　　　Wilmington, DE 19801
　　　　　　　　　　　　　　　　　　　　(302) 573-6491
　　　　　　　　　　　　　　　　　　　　(302) 573-6497 (fax)
　　　　　　　　　　　　　　　　　　　　Linda.richenderfer@usdoj.gov

**CERTIFICATE OF SERVICE**

I, Linda Richenderfer, Esq., do hereby certify that on this 20th day of February, 2023, I served the attached *United States Trustee's Response in Support of Motion to Dismiss* on counsel via electronic mail and/or ECF Notification.

/s/ *Linda Richenderfer*
Linda Richenderfer, Esq.